UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **KEVIN BOX, ET AL.,** } | |
| } | |
| **PLAINTIFFS,** } | |
| } | |
| v.  } | **CASE NO.: 4:11-CV-02829-MHH** |
| } | |
| **GOODYEAR TIRE & RUBBER** } | |
| **COMPANY, ET AL.,** } | |
| } | |
| **DEFENDANTS.** } | |

## **MEMORANDUM OPINION**

This is an ERISA action. Plaintiff Kevin Box, individually and as the representative for the Estate of Kenneth Box, and plaintiff Katrina Evatt seek pension benefits under defendant Goodyear Tire & Rubber Company's 1950 Pension Plan. Plaintiffs are the children of Kenneth Box. Mr. Box was an employee of Goodyear from September 5, 1975 until August 5, 2003, and he participated in the company's pension plan. On August 5, 2003, Mr. Box was shot and killed by his wife, Barbara A. Box.

At the time of his death, Mr. Box was an active Goodyear employee and was not receiving benefits under the pension plan. The Goodyear pension plan is a defined benefit plan. The plan provides a qualified pre-retirement survivor annuity

("QPSA") benefit for the surviving spouse of a vested plan participant who dies before he is eligible to receive his pension benefit.

Plaintiffs argue that the pre-retirement spousal benefit should be paid either to the estate of Kenneth Box or to Mr. Box's heirs because Mrs. Box is not eligible for the benefit. Goodyear agrees that Mrs. Box is not eligible for the benefit but argues that because the plan provides no contingent beneficiary for the QPSA, the pre-retirement spousal benefit is not payable to any person, not even Mr. Box's estate or his heirs. This Court must determine whether Goodyear must pay the pre-retirement spousal benefit under the terms of the plan.

## I.   ERISA STANDARD OF REVIEW

The Eleventh Circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

>   (1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
>   (2)   If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
>   (3)   If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). All steps of the analysis are "potentially at issue" when a plan vests discretion in the plan administrator to make benefits determinations. *Id.* at 1356, n. 7. The plaintiffs bear the burden of proving that they are entitled to ERISA benefits under the plan. *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

## II.   FACTUAL BACKGROUND[1]

### A.   The Plan

Goodyear's plan is a "pension plan" as that term is defined in ERISA, 29 U.S.C. §1002(2)(A). (Doc. 14-1, p. 8). The plan designates a "Pension Board" to administer the plan. (Doc. 14-9, p. 4). The plan vests the Pension Board with discretionary power over every facet of plan administration. (*Id.*).

---

[1] The parties filed a Stipulation of Facts in which the parties stipulated that Goodyear's Initial Disclosures and the documents produced by Goodyear with those disclosures are authentic and relevant. (Doc. 13).

Before a claim reaches the Pension Board in the administrative review process, a plan administrator determines whether to accept or deny a claim for benefits under the pension plan. (Doc. 14-4, pp. 48–49). If a plan administrator denies a claim for pension benefits, then the claimant may appeal using the plan's administrative review process. (*Id.* at 47–48). The plan's administrative review process consists of two levels. The "Benefits Review Committee" conducts the first level of review, and the Pension Board, which is also referred to as the "ERISA Appeals Committee," conducts the second and final level of review. (*Id.* at 3–4).

Article V of the plan provides for a QPSA, called the "Special 50% Joint and Survivor Pre-Retirement Option." (Doc. 16-1, p. 13). Article V(1) states that if an employee dies before receiving his plan benefit payment, his surviving spouse is entitled to receive monthly benefit payments for the spouse's lifetime. (*Id.*). For a surviving spouse to qualify for the monthly benefit, the spouse and the employee must have been married for a one-year period ending on the date of the employee's death, and the employee must not have elected to waive the pre-retirement spousal benefit. (*Id.* at 13–14).

The plan does not address eligibility and payment options for the pre-retirement spousal benefit under the plan should the surviving spouse murder the plan participant, violate state or federal law in a manner that would preclude the surviving spouse's right to such benefit, or otherwise become ineligible for the benefit. (Doc. 16-1; Doc. 16-3, p. 1; Doc. 16-4, p. 1). The plan provides no option for an employee to elect or designate a contingent or secondary beneficiary of the QPSA benefit. (Doc. 16-1; Doc. 16-3, p. 1). Article V(1) provides that only a surviving spouse is eligible for the payment of the pre-retirement spousal benefit, and the plan does not authorize payment of such benefit to another beneficiary. (Doc. 14-4, pp. 26–28). Article V(1) states:

> The surviving spouse of a married Employee or former Employee who has at least one hour of service or is on paid leave after August 22, 1984, who is entitled to a pension under the provisions of Article III as in effect on the date of his death, and who dies prior to the commencement of retirement benefits under the Plan will be covered by the Pre-Retirement Benefit described in this Paragraph 1 in lieu of any pension otherwise payable under the Plan; provided that the deceased Employee or former Employee has been married to the surviving spouse throughout the one-year period ending on the date of his death; and provided, further, that during the applicable election period the Employee or former Employee did not elect, with spousal consent, to waive the Pre-Retirement Benefit provided hereunder. . . .

> Upon the death after August 22, 1984, and prior to retirement eligibility of any married Employee or former Employee who has not effectively waived the Pre-Retirement Benefit provided hereunder or who has revoked a prior effective waiver of the Pre-Retirement Benefit provided hereunder, monthly payments will be made to the surviving spouse of the Employee. . . .

(*Id.*).

### B. The Benefit Claim Dispute

On August 5, 2003, Barbara Box shot and killed her husband, Kenneth Box. (Doc. 1, ¶ 11; Doc. 9, ¶ 11; Doc. 16-5). Mrs. Box was convicted of murder in the Circuit Court of Etowah County in March 2006 and currently is in jail. (Doc. 1, ¶ 11; Doc. 9, ¶ 11; Doc. 16-5). Mr. and Mrs. Box were married for the 12 months immediately preceding Mr. Box's death, and he did not waive the pre-retirement spousal benefit. (Doc. 14-4, p. 38). Mr. Box was an active employee when he died, meaning that he was not retired and was not receiving a benefit under the plan. (*Id.*). Kevin Box and Katrina Evatt are the surviving heirs of Kenneth Box. (Doc. 1, ¶¶ 1, 2).

In 2007, an attorney representing Mr. Box's estate requested information from Goodyear regarding Mr. Box's pension benefits so that the benefits could be included in the valuation and settlement of his estate. (Doc. 14-4, p. 49). In a letter dated July 12, 2007, the administrator of Goodyear's plan denied this request.

(*Id.*). The letter stated that pension benefits were not payable to the estate or to anyone other than the spouse, Barbara Box. (*Id.*).

In 2010, the plaintiffs' attorney asked Goodyear for copies of various plan documents and Mr. Box's complete pension claim file. (Doc. 14-5 pp. 49–50). The plan administrator denied the request for plan documents in a letter dated May 7, 2010. (*Id.* at 37). The letter states: "Legally, we are required to pay pension benefits to the spouse without having written consent to pay otherwise." (*Id.*). The administrator also notified plaintiffs' counsel that the plaintiffs had a right to appeal to the Benefits Review Committee and to submit evidence in support of an appeal. (*Id.* at 37–38). On June 1, 2010, the plaintiffs responded to Goodyear's denial of the request for plan documents. (*Id.* at 35–36). Plaintiffs cited federal case law that discusses the doctrine of "killers don't take" and asked the plan to pay the pension benefit to Kenneth Box's estate. (*Id.*).

On July 6, 2010, plaintiffs appealed the matter to the Benefits Review Committee. (*Id.* at 34). The Benefits Review Committee met in September 2010 to consider plaintiffs' claim and reviewed all available information, including the plan and the information that plaintiffs submitted in support of their claim. (*Id.* at 23–24). In a letter dated October 4, 2010, the committee denied plaintiffs' appeal. (*Id.*). The letter states that because federal common law and Alabama's "slayer statute" prohibit payment of benefits to a

surviving spouse convicted of murdering the plan participant, the plan determined that no payment should be made to Mrs. Box. (*Id.*). According to the letter, no benefits were payable to any other person because, absent spousal waiver, the pre-retirement spousal benefit is available only to an employee's surviving spouse under the terms of the plan. (*Id.*).

In an October 13, 2010 letter, the plaintiffs requested a copy of all documents, records, and other information that the Benefits Review Committee relied upon in arriving at its decision. (Doc. 14-5, pp. 21–22). On November 22, 2010, Goodyear shared with the plaintiffs "all of the information that was provided to Goodyear's Benefits Review Committee for them to make a decision in the claim review process of Kenneth Box." (*Id.* at 19).

On December 2, 2010, in accordance with the pension plan's administrative procedures, the plaintiffs appealed to Goodyear's ERISA Appeals Committee. (Doc. 14-4, pp. 39–42). Plaintiffs argued that federal common law, the Alabama slayer statute, and Alabama state law all supported payment of the pension benefit to the estate or heirs of the murdered plan participant in lieu of the slaying spouse. (*Id.*). Plaintiffs again asked Goodyear to make pension payments either to the estate of Kenneth Box or to Kevin Box and Katrina Evatt directly. (*Id.*). A timeline of events and an appendix of materials, including all correspondence

between plaintiffs and the plan as well as federal and state case law, accompanied the letter.  (*Id.* at 36).

On March 16, 2011, Goodyear's ERISA Appeals Committee held an appeal hearing on the plaintiffs' claim.  (Doc. 16-11).  During the appeal hearing and immediately following the hearing, plaintiffs' counsel presented legal authority to the Goodyear ERISA Appeals Committee to support the plaintiffs' request for benefits. (*Id.*).

On March 25, 2011, Goodyear sent a letter to the plaintiffs denying their second appeal for pension benefits.  (Doc. 14-4, p. 17–18).  Goodyear explained that it had reviewed all of the information contained in Mr. Box's claim file and all of the information that the plaintiffs submitted, including the information presented at the March 16, 2011 appeal hearing.  (*Id.*).  Goodyear stated that according to the plan, only a surviving spouse is entitled to annuity payments when a married plan participant dies before starting to receive a monthly pension payment.   (*Id.*).  Goodyear wrote that, "[t]his is a result of the Plan design . . ." (*Id.*).  Goodyear noted that the factual circumstances of the plaintiffs' claim presented a matter of "first impression" for the Pension Board.  (*Id.*).  Goodyear considered federal common law and Alabama's "slayer statute" and ultimately determined that federal common law controlled plan administration.  (*Id.*).  Goodyear found that under the

federal common law "slayer rule," Mr. Box's surviving spouse was barred from receiving the Pre-Retirement Spousal Benefit. (*Id.*).

The plaintiffs exhausted all administrative remedies available under the plan. (Doc. 16-4, p. 2). On August 16, 2011, based on the Pension Board's final denial of their claim for pension benefits, the plaintiffs filed suit under ERISA in this Court. (Doc. 1).

### III. ANALYSIS

The parties have raised several issues. The Court considers those issues in the following order: (1) whether the plaintiffs have standing; (2) whether Goodyear's denial of ERISA benefits was proper under the applicable standard of review; and (3) whether the plaintiffs can assert a breach of fiduciary duty claim against Goodyear.

> **A.    Mr. Box has derivative standing to bring suit under ERISA as the personal representative of a former plan participant's estate.**

To pursue an ERISA claim, a plaintiff must have standing. Courts recognize two types of standing under § 1132(a): independent standing and derivative standing. *See Cagle v. Bruner*, 112 F.3d 1510, 1514–15 (11th Cir. 1997), *reh'g en banc denied*, 124 F.3d 223 (11th Cir. 1997); *see also Estate of Prince v. Aetna Life Ins. Co.*, 2008 WL 4327049, at *3 (M.D. Fla. Sept. 19, 2008). Participants and beneficiaries have independent standing under § 1132(a). 29 U.S.C. § 1132(a)(1)(B). "[S]uccessors in interest to participants or beneficiaries may []

10

sustain an action under § 1132(a)(1)(B), via derivative standing." *Estate of Prince*, 2008 WL 4327049, at *3; *see also Cagle*, 112 F.3d at 1515 (holding that a party may obtain "derivative standing based upon an assignment of rights from an entity listed in" § 1132(a)).

In his capacity as the representative for the estate of Kenneth Box, Kevin Box has derivative standing. "[A] deceased-participant's estate qualifies for derivative standing" because the estate "'seeks only to enforce the beneficiary's rights to pre-death accrued'" benefits. *Estate of Prince*, 2008 WL 4327049, at *3 (quoting *Cottle v. Metro. Life Ins. Co.*, 1993 WL 8201, at *2 (N.D. Ill. Jan. 13, 1993); *see also James v. La. Laborers Health and Welfare Fund*, 766 F. Supp 530, 533 (E.D. La. 1991). This is true even when the deceased would not have been entitled any benefit. *See In re Estate of Burkland*, 2012 WL 13550 (E.D. Pa. Jan. 3, 2012). In *Estate of Burkland*, the estate of a deceased plan participant, whose wife allegedly killed him, challenged the distribution of life insurance proceeds under the deceased's plan. 2012 WL 13550, at *1. The deceased's wife was named as the primary beneficiary on the insurance policy, and the deceased's son was the contingent beneficiary. *Id.* The deceased's wife allegedly disclaimed her rights to the policy pursuant to an agreement with her son, the contingent beneficiary, so that her son would give her a portion of the proceeds to retain an attorney for her homicide defense. *Id.* The court held that the estate had standing

to challenge the distribution as a representative of a former plan participant. *Id.* at *4.

Consistent with this persuasive authority, Kevin Box, acting as personal representative for the estate of a former plan participant, has derivative standing to pursue plan benefits in this action.[2]  Therefore, the Court reaches the merits of the estate's challenge to Goodyear's refusal to pay the QPSA benefit.

### B.   Goodyear Properly Denied the ERISA Benefits.

The Court begins its analysis by determining *de novo* whether the claim administrator's denial of benefits was wrong.  In reaching his decision, the claims administrator had to examine the extent to which Mr. Box's murder by his wife, Mrs. Box, impacted the QPSA benefit.  The analysis turned on the administrator's interpretation of the terms of the plan and his selection and application of the appropriate "slayer rule," a rule concerning the eligibility of a beneficiary who murders an insured.  The administrator considered both Alabama law and federal law and decided to apply the federal common law slayer rule.  (Doc. 14-4, pp. 17–18).  The estate of Kenneth Box asserts that the administrator erred because the administrator should have used Alabama's slayer rule to evaluate the plaintiffs'

---

[2] Kevin Box and Katrina Evatt do not have standing in their individual capacities because they are neither plan participants nor beneficiaries.  They are not plan participants because they are not Goodyear employees.  Box and Evatt are not beneficiaries because neither is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  The estate of Kenneth Box also is not a beneficiary.  Mr. Box did not designate his estate as a QPSA beneficiary, and the plan does not designate the estate as such.  Therefore, the estate does not have independent standing.

request for benefits. (Doc. 16, p. 11; Doc. 19, p. 3). The Court does not have to choose because federal common law and Alabama's slayer statute dictate the same result in this action.[3]

*Honeywell Savings & Ownership Plan v. Jicha*, 2010 WL 276237 (D.N.J. Jan. 15, 2010), illustrates the point. In *Honeywell*, an ERISA plan participant was murdered. *Id.* The participant's husband was convicted of hiring a hit man to kill the participant. *Id.* At the time of her death, the decedent was enrolled in three employee benefit plans: a Savings and Ownership Plan ("SOP"), a Secured Benefit Plan ("SBP"), and a pension plan. *Id.* at *2. The decedent did not designate a beneficiary under these plans. *Id.* The SOP and SBP both provided that if the participant failed to name a beneficiary, then at the participant's death, the benefit would go to the participant's spouse, or if there was no spouse, to the participant's estate. *Id.* The QPSA stated that the surviving spouse was entitled to the benefit unless the participant elected not to provide QPSA coverage or the spouse had not

---

[3] The federal rule applies in this case if ERISA preempts Alabama's slayer rule. Neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals has determined whether ERISA preempts state slayer statutes. *See Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 152 (2001) (declining to address whether ERISA preempts state slayer statutes); *Kennedy v. Plan Admin'r for DuPont Sav. And Inv. Plan*, 555 U.S. 285 (2009) (same). Several district courts have concluded that ERISA does not preempt state slayer statutes. Courts addressing the issue have looked to *Egelhoff*, 532 U.S. at 152 (2001). There, the United States Supreme Court refused to rule on whether ERISA preempts state slayer statutes, but the Court noted in dicta that "the principle underlying [slayer] statutes—which have been adopted by nearly every State—is well established in the law and has a long historical pedigree predating ERISA." (*Id.*); *see Atwater v. Nortel Networks, Inc.*, 388 F. Supp. 2d 610, 614 (M.D.N.C. 2005); *Admin. Comm. for the H.E.B. Inv. and Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002).

been married to the participant for at least one year at the time of death. *Id.* The QPSA did not offer the option of naming a contingent beneficiary. *Id.* at *6. Pursuant to a motion for summary judgment, the *Honeywell* court had to determine whether, as a matter of law, the participant's husband was eligible to receive benefits under the employee benefit plans. *Id.* at *1.

To decide the issue, the *Honeywell* court examined both the relevant state slayer statute and the federal common law rule. The court found that the principles governing the state slayer statute were consistent with the federal common law standard so that the result was the same under either rule: the plan participant's husband was "not eligible to receive any benefits because he may not profit from his wrongful act." *Id.* at *6. Treating the husband as predeceasing his wife, the court looked to the terms of the plans to determine the proper beneficiaries. *Id.* The court declared that the estate was the proper beneficiary under the terms of the SOP and the SBP. The court also held that under the terms of the QPSA, only the surviving spouse could receive pension benefits; the plan did not provide for a contingent beneficiary. *Id.* Because the husband was ineligible for the QPSA benefit, the court concluded that "there is no beneficiary to whom the Pension Plan may be paid. The Pension Plan benefits will not be paid to any person." *Id.*

As in *Honeywell*, federal common law and the Alabama slayer statute are consistent and produce the same result in this case. The relevant portion of the Alabama slayer statute states:

> (c) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

Ala. Code § 43-8-253(c). The Alabama slayer statute treats Mrs. Box as though she predeceased Mr. Box. Therefore, Mrs. Box is not entitled to the QPSA benefit under Alabama law.

The federal common law principle regarding slayers is that no person should profit from her own wrong. *See Giles v. California*, 554 U.S. 353, 384 (2008) (citing *N.Y. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886)); *see also Honeywell Savings & Ownership Plan v. Jicha*, 2010 WL 276237, at *6. Thus, under either the Alabama slayer statute or federal common law, Mrs. Box is ineligible for the spousal benefit.

Under the terms of the Goodyear plan, Mrs. Box is the only QPSA beneficiary. The plan does not identify a contingent beneficiary. Applying the legal fiction that Mrs. Box predeceased her husband, there is no surviving spouse and thus no beneficiary to whom Goodyear must pay the spousal benefit. Therefore, as in *Honeywell*, the QPSA benefit should not be paid at all.

The estate of Kenneth Box points to *New Orleans Elec. Pension Fund v. DeRocha*, 779 F. Supp 845 (E.D. La. 1991), for the proposition that when a surviving spouse is disqualified under a QPSA, the benefit must be paid to the contingent beneficiary or the estate of the plan participant. (Doc. 16, p. 21–22). That decision is not persuasive in this case. Under the terms of the plan at issue in *DeRocha*, if a spouse was ineligible for the QPSA benefit, then the plan required payment to the designated beneficiary. *DeRocha*, 779 F. Supp. at 851. Moreover, Louisiana law provides that when a beneficiary becomes disqualified because the beneficiary is responsible for the death of the insured, the contingent beneficiary receives the proceeds. *Id.* Therefore, in *DeRocha*, both the plan and state law mandated payment of the QPSA proceeds to a contingent beneficiary named in the plan.[4]  In this case, neither the terms of the QPSA nor Alabama law requires payment of the QPSA to a contingent beneficiary.[5]

---

[4] The Louisiana Code states:

> (1) No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits under the contract accruing upon the death, disablement, or injury of the individual insured when the beneficiary, assignee, or other payee is either:
>
> (a) Held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement, or injury of the individual insured.
>
> (b) Judicially determined to have participated in the intentional, unjustified killing of the individual insured.
>
> (2) Where such a disqualification exists, the policy proceeds shall be payable to the secondary or contingent beneficiary, unless similarly disqualified, or, if no secondary or

16

contingent beneficiary exists, to the estate of the insured. Nothing contained in this Section shall prohibit payment pursuant to an assignment of the policy proceeds where such payment defrays the cost and expenses of the insured's funeral or expense incurred in connection with medical treatment of the insured. Nothing contained in this Section shall prohibit payment of insurance proceeds pursuant to a facility of payment clause, so long as such payment is not made to a beneficiary, assignee, or other payee disqualified by this Section.

LSA-R.S. 22:901(D). Alabama's slayer statute does not contain a provision similar to LSA-R.S. 22:901(D)(2) that requires payment of policy proceeds to the decedent's estate if no secondary or contingent beneficiary exists.

[5] The Box estate argues that under Alabama law, in a slayer situation, plan benefits pass to the decedent's estate. (Doc. 16, p. 20). In support of this argument, the estate points to two Alabama Supreme Court opinions: *Protective Life Ins. Co. v. Linson*, 17 So. 2d 761 (1944), and *Provident Life & Acc. Ins. Co. v. Hanna*, 311 So. 2d 294 (1975). In *Linson*, the Alabama Supreme Court recited the "well-settled rule" that "'a beneficiary in a life insurance policy who murders or feloniously causes the death of the insured forfeits all rights which he may have in or under the policy. This rule is based upon public policy and upon the principle that no one shall be allowed to benefit from his own wrong. * * *.' 29 Am.Jur. § 1310." *Id.* at 761. The beneficiary of the group life insurance policy at issue in *Linson* avoided application of the slayer rule in the trial court by relying on an incontestability clause in the policy. The Alabama Supreme Court reversed the trial court decision, holding that "[t]he basic reasons behind the denial of recovery in [a slayer] case are so compelling, we now declare the rule that no incontestability clause can invest the beneficiary who has feloniously slain the insured with the right to recover the death benefit, by stipulations closing the door to such defense or otherwise." *Id.* at 763. The insurer argued that because the beneficiary of the policy murdered the insured, the policy should be treated "as if no beneficiary had been named, the cause of action being in the personal representative of the insured." 17 So. 2d at 762. The Alabama Supreme Court did not answer the argument directly but noted that, "'[t]he fact that [the] public policy prevents the payment of the insurance benefits to the murderer does not void the insurance policy; the liability of the insurer is just the same when death is the result of murder as when it is produced by any other cause, and if there is any person who has a right to the benefits of the policy, his rights will be enforced.'" *Id.* (quoting *Austin v. United States*, 125 F.2d 816, 820 (7th Cir. 1942)).

In *Hanna*, the Alabama Supreme Court explained that, "[a]s decided in [*Linson*], where the primary beneficiary's rights are forfeited, the insurance company remains liable for the proceeds of the policy, to the contingent beneficiary or the insured's estate, as the case may be." *Hanna*, 311 So. 2d at 297. The policy at issue in *Hanna* expressly stated that, "'[a]ny amount of insurance for which there is no beneficiary at the death of the Employee shall be payable to the estate of the Employee.'" *Id.* at 295 (quoting the policy at issue). Neither *Linson* nor *Hanna* establishes a rule requiring an insurer to pay the estate in every slayer situation. Rather, the opinions stand for the proposition that in a slayer situation, the insurer is not relieved of its obligation to pay a person who has a contractual right to the benefits of the policy upon disqualification of the slayer. Here, Mrs. Box is the only person who may recover the QPSA

17

The Box estate also argues that state law must fill the "gap" created by the plan's failure to provide for a contingent beneficiary. (Doc. 18, p. 14–15). Here, the plan expressly provides for an alternative beneficiary in other situations, such as the death benefit described in Article IV(8)(d). (Doc. 14-9, p. 9). Like the court in *Honeywell*, this Court views the absence of an express provision for a contingent beneficiary not as a gap in the plan, but as an expression of intent not to provide such a benefit. Alabama's rules of contract interpretation support the Court's analysis. *See Certain Underwriters at Lloyd's, London v. Kirkland*, 69 So. 3d 98, 101 (Ala. 2011) ("Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.") (internal quotations omitted). Even if this Court were to regard the absence of a provision for a contingent beneficiary as a gap in the plan, Alabama law does not supply a means to fill the gap. *See* note 5, *supra*. Alabama's slayer statute does not require Goodyear to make payments to the estate. The statute mandates that the policy "becomes payable as though the killer had predeceased the decedent." Under the terms of the plan, if Mrs. Box predeceased Mr. Box, Goodyear would not have to pay the pre-retirement spousal

---

benefit under the terms of the Goodyear plan. Because Mrs. Box is ineligible for the benefit as a matter of law, Goodyear does not have to pay the benefits.

benefit.  Thus, even applying state law to fill the gap, Goodyear properly refused to pay benefits to the Box estate.

Thus, based on its *de novo* review of the record, the Court finds that the plan administrator's decision to deny benefits was correct.

### C. Plaintiffs' Breach of Fiduciary Duty Claim Fails as a Matter of Law.

As an alternative to the estate's claim for plan benefits under § 1132(a)(1), the estate seeks equitable relief for breach of fiduciary duty under § 1132(a)(3).  (Doc. 1, ¶¶ 35–41).  Claims for equitable relief under § 1132(a)(3) are available only when a plaintiff has no other claim for relief under ERISA.  *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284 (11th Cir. 2003) (stating that the central focus is "whether Congress has provided an adequate remedy . . . elsewhere in the ERISA statutory framework").  The estate's primary claim is for an award of plan benefits under § 1132(a)(1), and the relief sought for breach of fiduciary duty is an award of those same benefits.  (Doc. 1, pp. 10–11).  Congress has provided an adequate remedy for plaintiffs' claims under § 1132(a)(1).  Therefore, the estate may not pursue equitable relief.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Goodyear's motion for summary judgment (Doc. 14) and **DENIES** the estate of Kenneth Box's motion for

19

summary judgment (Doc. 15). The Court will enter a final order consistent with this memorandum opinion.

      **DONE** and **ORDERED** this September 25, 2014.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE